NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 18 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GERARDO GUZMAN-GUTIERREZ,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,

Respondent.

No. 20-71979

Agency No. A205-699-392

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 12, 2026**
Seattle, Washington

Before: W. FLETCHER and M. SMITH, Circuit Judges, and HINDERAKER,***
District Judge.

Gerardo Guzman-Gutierrez petitions for review of the Board of Immigration

Appeals' ("BIA") order dismissing his appeal from an immigration judge's ("IJ")

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

*** The Honorable John Charles Hinderaker, United States District Judge
for the District of Arizona, sitting by designation.

decision denying his application for cancelation of removal under 8 U.S.C. § 1229b(b). We have jurisdiction under 8 U.S.C. § 1252. We review de novo the BIA's determination of legal questions and due process challenges to final orders of removal. *Padilla-Martinez v. Holder*, 770 F.3d 825, 830 (9th Cir. 2014) (citations omitted). We review whether the BIA erred in applying the exceptional and extremely unusual hardship standard for substantial evidence. *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1003 (9th Cir. 2025). We deny the petition.

1. During a removal proceeding, "the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B). Noncitizens in removal proceedings have a due process right to a full and fair proceeding, *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000), but to proceed on a procedural due process claim, a noncitizen must show the violation caused him prejudice. *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018).

Petitioner has not established that the IJ's conduct prejudiced him. To demonstrate prejudice in a removal proceeding, a petitioner must show "that the outcome of the proceeding may have been affected by the alleged violation." *Zamorano v. Garland*, 2 F.4th 1213, 1226 (9th Cir. 2021) (quoting *Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (per curiam)). The IJ did not allow

Petitioner's ten-year-old son, A.G., to testify because the IJ thought it would have been too traumatic. The IJ did allow Petitioner and Petitioner's lawful permanent resident ("LPR") parents to testify, however. These three witnesses testified about Petitioner's relationship with A.G., A.G.'s health conditions, and the difficulties A.G. would face in adjusting to life in Mexico were he to go with his father. These are the same subjects Petitioner's counsel proffered A.G. would have testified about. *See* AR 471 (A.G. would "testify about how he suffers from asthma and how he is excelling in school . . . [and] as to all the things his father does for him and most importantly how he feels safe with his father"). Nothing in the record indicates that any additional testimony A.G. would have offered about his relationship with his father, the difficulty he would face moving to Mexico, or his medical conditions—which were not causing any notable impairments at the time of the hearing—could have changed the IJ's decision when the IJ had already heard testimony and reviewed evidence concerning each of these topics. And, in view of the tenuous nature of Petitioner's claim for cancelation of removal, there is no reasonable possibility that the testimony would have carried such emotional sway as to potentially affect the proceeding's outcome. *See Zamorano*, 2 F.4th at 1226.

2. In evaluating whether a petitioner has met the exceptional and extremely unusual hardship standard, an IJ considers "the ages, health, and circumstances of

qualifying lawful permanent resident and United States citizen relatives." *In re Monreal*, 23 I. & N. Dec. 56, 63 (BIA 2001). To constitute exceptional and extremely unusual hardship, "the hardship must be out of the ordinary and exceedingly uncommon. It must deviate, in the extreme, from the norm. The agency must compare the hardship in a given case to the hardship that results in the usual, ordinary course when an alien is removed." *Gonzalez-Juarez v. Bondi*, 137 F.4th 996, 1006 (9th Cir. 2025). "[A]ll hardship factors should be considered in the aggregate when assessing exceptional and extremely unusual hardship." *In re Monreal*, 23 I. & N. Dec. at 63.[1]

Petitioner has not met this "very demanding" standard. *de Garcia v. Holder*, 621 F.3d 906, 913 (9th Cir. 2010). Though Petitioner's son and parents will undoubtably experience hardship resulting from Petitioner's removal, A.G. does

---

[1] Though Petitioner contends the IJ applied the wrong legal standard by failing to consider the harm to all Petitioner's qualifying family members in the aggregate, he is mistaken. The IJ's decision recited the requirement that "[a]ll hardship factors should be considered in the aggregate" and found "the circumstances described by [Petitioner were] not exceptional and extremely unusual." AR 74, 80. The BIA adopted the IJ's reasoning and found that, "[c]onsidering the evidence individually and cumulatively," Petitioner had not shown his qualifying relatives would suffer exceptional and extremely unusual hardship. AR 3. Both the IJ and the BIA cited the *Monreal* decision that Petitioner invokes for his argument in applying the hardship standard. *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009) ("[T]he IJ expressly cited and applied *Monreal* in rendering its decision, which is all our review requires."), *abrogated on other grounds by Wilkinson v. Garland*, 601 U.S. 209 (2024).

not have "very serious health issues, or compelling needs in school," and Petitioner's parents are not "solely dependent upon him for support." *In re Monreal*, 23 I. & N. Dec. at 63–64 (giving examples of applicants who would likely have a strong case). The evidence does not show that the hardship to Petitioner's parents and son would be "'substantially' beyond the ordinary hardship that would be expected when a close family member leaves this country." *Id.* at 62.

3. The BIA may "not engage in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv). The BIA did not engage in factfinding by stating that Petitioner's sibling sponsoring their parents' visa petition required accepting financial responsibility for them. The IJ's decision noted Petitioner's parents received their green cards after another son married a U.S. citizen and later became a U.S. citizen himself. Such sponsorship necessarily requires the sponsor to agree "to provide support to maintain the sponsored alien" at a threshold income for a statutorily-mandated period. 8 U.S.C. § 1183a(a)(1)(A).

Petitioner correctly notes that the IJ's decision does not mention the possibility that Petitioner may be able to adjust or immigrate to the United States in the future. However, the BIA's decision overwhelmingly focused on A.G.'s lack of serious health issues and the ability of Petitioner's siblings in the United States to care for his parents. Accordingly, to the extent the BIA's reference to this

5

possibility constituted factfinding, it was harmless error because there is "no indication that . . . [it] changed the result here." *Salgado v. Sessions*, 889 F.3d 982, 989 (9th Cir. 2018).

**PETITION DENIED.**